# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| JOHN DOE,<br>    Plaintiff,<br>v.<br><br>PHIL BREDESEN, et al.,<br>    Defendants | No. 3:06-CV-72<br>(Phillips) |

## MEMORANDUM OPINION

Plaintiff John Doe brought this action to enjoin the defendants from requiring him to wear an electronic device as a condition of probation and to register as a sexual offender for the rest of his life. He contends that such requirements are unconstitutional because they violate the *Ex Post Facto* Clause of the United States Constitution, as well as his rights to privacy and procedural due process. Plaintiff Doe also contends that such requirements violate his right against self-incrimination. Defendants have moved to dismiss plaintiff's complaint because the registration and electronic monitoring requirements are not punishment, rather they are reasonable regulatory measures which are intended to protect the public, and are constitutional as applied to plaintiff. The court agrees, and defendants' motion to dismiss will be granted and this action dismissed.

## Background

After January 1, 1995, but before July 1, 2004, Doe pleaded guilty in the Criminal Court of Knox County to attempted aggravated kidnaping and two counts of sexual battery by an authority figure. He received a sentence of eighteen (18) years to be served on probation. At the time of the plea, Doe's criminal offense was classified as a "sexual offense" under Tennessee law. His offense remained so classified until August 1, 2004, when the State of Tennessee enacted the "Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004." Tenn. Code Ann. § 40-39-201 *et seq.* Pursuant to Tenn. Code Ann. § 40-39-202(24)(j), Doe's criminal offense is currently classified as a "violent sexual offense." As a violent sexual offender, Doe must comply with the requirements of the Tennessee Bureau of Investigation Sexual Offender Registry for the remainder of his life. Tenn. Code Ann. § 400-39-207(g)(1)(B). Under Doe's previous classification, he had an opportunity, after ten (10) years of termination of his probation, to file a petition in the circuit court where he resided, relieving him of filing registration forms, and expunging all related data pertaining to him. Tenn. Code Ann. § 40-39-107.

On July 1, 2004, the "Satellite Based Monitoring Program" took effect. Tenn. Code Ann. § 40-39-303. This provision allows the Board of Probation and Parol to enroll a person convicted of a sexual offense in a satellite based monitoring program for the extent of his term of probation. *Id.* On or about August 15, 2005, Doe was notified by his

probation officer that beginning in September 2005, he would be required to wear a global positioning device (GPS) at all times.

**Analysis**

A motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867 (1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

Doe alleges that Tenn. Code Ann. §§ 40-39-201 and 40-39-306 are unconstitutional in their application to him as the statutory provisions infringe upon his fundamental right to privacy. He also alleges that these statutory provisions are

-3-

unconstitutional as applied to him because they impose a punishment in violation of the *Ex Post Facto* Clause; they violate his right to procedural due process under the Fourteenth Amendment; and they violate his right against self-incrimination under the Fifth Amendment.

<u>*Ex Post Facto* Clause</u>

Doe contends that Tenn. Code Ann. §§ 40-39-202(24)(25) and 40-39-207 violate the prohibition against *ex post facto* laws because these provisions impose an affirmative disability or restraint on him that is the equivalent of punishment. He contends that under the statutes, he is classified as a violent sexual offender who must report in person quarterly to police authorities to update his information, and he must do this for life. Under the prior law, he was classified as a sexual offender who after ten years could petition to be removed from the registry. Thus, Doe argues that this reclassification is increased punishment and violates the prohibition against *ex post facto* laws.

Doe's primary objection is not the requirements themselves, but to the new length of time he is now subject thereto as imposed by the 2004 Act. The registration requirements themselves have not changed, rather, what has changed is the length of time he must be subject to them. At the time of his plea, Doe knew that he would be subject to the registration requirements for a minimum of ten years. He never agreed to be bound to maintain registration for the remainder of his life as is now required by the 2004 Act. Doe contends he might not have pleaded guilty if the 2004 Act lifetime registration requirements

were then in effect. He maintains that this change in the law amounts to punishment forbidden by the *Ex Post Facto* Clause.

The constitutional issues related to the change in classification and increased registration requirements were recently addressed by the Honorable Leon Jordan, Senior Judge, Eastern District of Tennessee, in *Mr. & Mrs. John and Jane Doe v. Phil Bredesen, et al.,* Civil Action No. 3:04-cv-566. In that case, Judge Jordan upheld the constitutionality of the Tennessee statutes at issue. Doe has raised the same arguments that were addressed by Judge Jordan in *Mr. & Mrs. Doe.* This court concurs with Judge Jordan's thoughtful analysis of the issues and his conclusion that the Tennessee statutes are constitutional as applied to individuals such as Doe.

Tenn. Code Ann. § 40-39-202(24) defines "violent sexual offender" and § 40-39-202(25) defines "violent sexual offense." What is relevant to Doe is subdivision (25), subpart (H) that defines a violent sexual offense to be the commission of an aggravated kidnapping where the victim is a minor, under § 39-13-304, and subpart (J) that defines sexual battery by an authority figure, under § 39-13-527, as violent sexual offenses. Doe does not dispute that his convictions fall within the conduct encompassed by §§ 39-13-304 and 39-13-527, and that these statutory provisions are used to classify him as a "violent sexual offender." Section 40-39-207(f)(1)(B) sets the requirement that a person convicted of a violent sexual offense as defined in § 40-39-202(25) must comply with the registration, verification, and tracking requirements of the Act for life. Section 40-39-204(b) establishes

that violent sexual offenders must report in person on a quarterly basis to update information.  Doe contends that these statutory provisions impose an affirmative disability or restraint on him that equates to the imposition of punishment.

Defendants assert that the requirements imposed on sexual offenders by these statutory provisions are reasonable regulatory measures, not punishment.  Therefore, they do not violate the *ex post facto* prohibition.  The court agrees.

The *ex post facto* prohibition forbids the Congress and the states to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed."  *Weaver v. Graham,* 450 U.S. 24, 28 (1981).  Two elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.  *Id.* at 29.

However, not every change that alters a person's situation to his detriment is prohibited by the *Ex Post Facto* Clause.  *See Collins v. Youngblood,* 497 U.S. 37, 50 (1990); *see also Cal. Dept of Corr. v. Morales,* 514 U.S. 499, 506 n.3 (1995) ("After *Collins,* the focus of the *ex post facto* inquiry is not whether a legislative change produces some ambiguous sort of 'disadvantage' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which the crime is punishable").

In addition, retrospective application alone is not sufficient to establish an *ex post facto* violation. No *ex post facto* violation occurs if a change does not alter "substantial personal rights," but merely changes "modes of procedure which do not affect matters of substance." *United States v. Ristovski,* 312 F.3d 206, 210 (6th Cir. 2002) (quoting *Miller v. Florida,* 482 U.S. 423, 430 (1987)). However, "a change in the law that alters a substantial right can be *ex post facto* even if the statute takes a seemingly procedural form." *Ristovski,* 312 F.3d at 211. The general rule that has developed from the case law "is that a change is procedural, and does not affect a substantial right if the change does not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Id.*

In *Smith v. Doe,* 538 U.S. 84 (2003), the Supreme Court considered for the first time the issue of whether a sexual offender registration and notification law constituted retroactive punishment in violation of the *Ex Post Facto* Clause. The Court set out the framework for analyzing *ex post facto* challenges in this context:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the state's intention to deem it civil. Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Id.* at 92.

The Supreme Court determined in *Smith* that Alaska intended to establish civil proceedings when it enacted its sexual offender and registration law, and therefore the legislature had not intended to impose punishment. The Court then proceeded to the second step of the analysis and examined the effects of the act by referring to the factors set out in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-69 (1963). The Court stated:

> Because the *Mendoza-Martinez* factors are designed to apply in various constitutional contexts, we have said they are neither exhaustive nor dispositive, but are useful guideposts. The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

*Smith*, 538 U.S. at 97. The Supreme Court ultimately held that Alaska's sexual offender registration and notification law did not violate the *Ex Post Facto* Clause.

In *Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir. 1999), the Sixth Circuit addressed multiple constitutional challenges to the original Tennessee Sex Offender Registration and Monitoring Act enacted in 1994. The court noted that since the lawsuit at issue had been filed, the law had been amended; however, as enacted, the law had no express statement of purpose. *Id.* at 474. After relying primarily on the language of the statute, the court ultimately found "no indication that the Tennessee legislature intended the Act to be a punitive measure." *Id.*

The 2004 Act contained a specific statement of legislative findings and intent. Tenn. Code Ann. § 40-39-201. This provision provides in part that protecting the public from sexual offenders is of paramount interest; that there is a compelling public interest for the public to have information concerning sexual offenders in order to protect themselves and their children; and that the registration of offenders and the release of specified information about them furthers the governmental interest of public safety. This statutory provision specifically states:

> To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing the release of necessary and relevant information about offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive;
>
> . . . .
>
> The general assembly also declares, however, that in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on any such offenders.

Tenn. Code Ann. §§ 40-39-201(b)(6) and (8).

The court concludes that with the 2004 Act, the Tennessee legislature intended to implement a civil regulatory scheme, not one of punishment. This being the case, the court must next determine whether the effects of the Act are so punitive that when applied they negate the state's nonpunitive intent. To make this determination, the court looks to the guideposts set out by the Supreme Court in *Mendoza-Martinez.*

The court will first examine the affirmative disability or restraint factor. Doe contends that reclassifying him as a violent sexual offender and requiring him to update his information for life creates such a disability and restraint as to constitute punishment.

In determining whether the Tennessee statute in its application constitutes an affirmative disability or restraint, the court looks to the language of the Act itself to determine whether the legislature intended to impose punishment. The language of the statute indicates that protection of the public was the reason for the enactment of Tenn. Code Ann. § 40-39-303. That statute was part of Chapter 889 of the Public Acts of 2004. Section 3 of the Public Chapter states:

> The general assembly hereby finds and declares the following:
>
> (a) The United States Department of Justice has published confirmed statistics that over sixty percent (60%) of serious and violent sex offenders in state prisons have a prior conviction history and that the number of prisoners convicted for violent sexual assault has increased by an annual percentage of fifteen percent (15%) each year since 1980;
>
> (b) Criminals who commit serious and violent sexual crimes have shown unusually high recidivism rates, thereby posing an unacceptable level of risk to the community;
>
> (c) Intensive supervision of serious offenders and violent sex offenders is a crucial element to both the rehabilitation of the released convict and the safety of the surrounding community.
>
> (d) Mature technological solutions now exist to provide improved supervision and behavioral control of serious offenders and violent sex offenders following their release;
>
> (e) These solutions can now also provide law enforcement and correctional professionals with significant new tools for

> electronic correlation of the constantly-updated geographic location of supervised serious offenders and violent sexual offenders following their release with the geographic location of reported crimes, both to possibly link released offenders to crimes or to possibly exclude released offenders from ongoing criminal investigations; and
>
> (f) Continuous twenty-four (24) hours a day, seven (7) days a week electronic monitoring of those convicted of serious and violent sexual offenses is a valuable and reasonable requirement for those convicts who are placed on probation; who have failed to register as a sexual offender as required by law; or who have been released from incarceration while they remain under the active supervision of the Department of Correction, the Board of Probation and Parole, or other state and local agencies."

In *Smith v. Doe,* the Court also recognized that although the stated purpose of a statute might be to protect the public, the burdens it imposes might be so severe as to impose punishment. The Court stated that the following factors should be considered to determine whether a statute has such a punitive effect: (1) whether in its necessary operation, the statute has been regarded traditionally as punishment; (2) whether the statue imposes an affirmative disability or restraint; (3) whether the statute promotes the traditional aims of punishment; (4) whether the statute has a rational connection to a non-punitive purpose; and (5) whether it is excessive with respect to that purpose. *Id.* at 1149.

Applying this test to the instant case, the court finds that Tenn. Code Ann. § 40-39-303 does not operate to impose punishment in the traditional sense. Tennessee has a compelling, nonpunitive interest in keeping its citizens, especially children, safe from sexual offenders, particularly in light of the high rate of recidivism among such offenders.

*Cutshall,* 193 F.3d at 476. Keeping registration information current and disseminating that information to alert the public advances that interest and promotes the welfare of Tennessee's citizenry. The reporting requirements for violent sexual offenders and the length of time those requirements are in effect are reasonably related to the danger posed by recidivism.

In addition, the Tennessee Act does not impose physical restraint, so it "does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Smith,* 538 U.S. at 100. Those subject to the Act can change jobs or residences. The lifetime registration that Doe is subject to may be burdensome, but such an obligation is "less harsh than the sanctions of occupational debarment" the Supreme Court has held to be nonpunitive. *Id.* (citing *Hudson v. United States,* 522 U.S. 93, 104 (1997) (forbidding further participation in the banking industry); *De Veau v. Braisted,* 363 U.S. 144 (1960) (forbidding work as a union official); *Hawker v. New York,* 170 U.S. 189 (1898) (revocation of a medical license)). The court concludes that the reporting requirements for violent sexual offenders under the 2004 Act do not constitute an affirmative restraint or disability. Next, the court will briefly look at the remaining *Mendoza-Martinez* factors that are relevant here.

Concerning the factor of whether the regulatory scheme has been regarded in our history and traditions as a punishment, the court relies on the Supreme Court's discussion of this factor in *Smith*. The Supreme Court concluded that colonial punishments

such as branding and banishment of criminals are not the equivalent of the registration of sexual offenders and the dissemination of information about them to the public. *Smith,* 538 U.S. at 97-99. As the Court noted, the stigma associated with sexual offender registration and notification laws "results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. *Id.* at 98.

Whether the Act promotes the traditional aims of punishment is a factor that does not weight heavily in this case. There may be some deterrent effects from the operation of the Act, and deterrence is a purpose of punishment. However, that does not make the law punitive. "Any number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the government's ability to engage in effective regulation." *Id.* at 102.

Whether the Act has a rational connection to a nonpunitive purpose is a "most significant" factor in the determination of whether the effects of the statute are punitive. *Id.* The Act has the nonpunitive purpose of protecting the public, especially children, from sexual offenders, and this purpose is effecting by alerting the public to sexual offenders located in their community. Sexual offenders present a high risk of recidivism. *Id.* at 103. In view of this risk, the Tennessee legislature could well conclude that the regulatory

scheme of the Act would protect the public by reducing the risk of repeated sexual offenses. This factor strongly supports the conclusion that the Act is nonpunitive.

Next, the court must consider whether the Act is excessive in relation to its regulatory purpose. The excessiveness inquiry of *ex post factor* jurisprudence "is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id.* at 105. "Congress and the legislature of the several states, have considered the egregiousness of sexual crimes, particularly where children are concerned, and studies have indicated that sexual offenders have high rates of recidivism." *Cutshall,* 193 F.3d at 476. The regulatory scheme of the Act is reasonable in light of the state's nonpunitive objective of protecting the health and safety of its citizens, in particular its children. Thus, the court finds the Act is not excessive.

The court has considered the two remaining *Mendoza-Martinez* factors, whether the behavior to which the regulation applies is already a crime and whether it comes into play only on a finding of scienter, and finds that these factors carry very little weight and have little significance in the court's analysis. After considering the relevant factors, the court concludes that the effects of the Act are not so punitive as to negate the state's intent to create a civil regulatory scheme. The Act is nonpunitive. Therefore, applying it retroactively does not violate the *Ex Post Facto* Clause.

The classification of sexual offenders under the Act is part of a nonpunitive regulatory framework. Doe's convictions remain the same, and his punishment for the crimes did not change. What did change is the classification of those crimes within a nonpunitive regulatory scheme designed to address the danger of recidivism and to protect the health and safety of the public. Doe's reclassification within the Act's framework is not punishment; rather, it is a function of a changing and evolving regulatory scheme that applies to him because of the particular crimes he committed. The *Ex Post Facto* Clause "does not preclude a state from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103. Since the Act's regulatory scheme is not punishment, changes made within that scheme that alter Doe's status and reporting requirements are not punishment and do not violate the *Ex Post Facto* Clause.

Doe also argues that at the time he pleaded guilty, there was no satellite based electronic monitoring system for offenders. Doe argues that the GPS device can interfere in his employment, social life, and life in general both by its ubiquity and operation. In addition, Doe asserts the monitoring device itself calls attention to his status as a convicted sex offender, and amounts to punishment in violation of the *Ex Post Facto* Clause.

Tenn. Code Ann. § 40-39-303 authorizes the Department of Probation and Parole to require a convicted sex offender to wear an electronic device which provides

constant information about his location at any given time. As the Court noted in *Smith v. Doe,* providing information has not traditionally been regarded as a form of punishment. *Id.* at 99. The Tennessee statute does not impose any affirmative disability or restraint. There is no showing that the device has the capability of physically preventing Doe from going wherever he chooses. The fact that it can report his location, by itself, is not a form of physical restraint.

Tenn. Code Ann. § 40-39-303 has a rational connection to a non-punitive purpose. As noted above, sex offenders have high rates of recidivism. With satellite-based monitoring, authorities can now ascertain the whereabouts of an offender, and attempt to make sure that the offender is not attempting to frequent places where he should not pursuant to the terms of his probation. As indicated by the findings of the Tennessee Legislature, "intensive supervision of serious offender and violent sex offenders is a crucial element to both the rehabilitation of the released convict and the safety of the surrounding community." 2004 Tenn. Pub. Acts 899.

Moreover, the Tennessee statute is not excessive in light of its purpose of protecting the public from the dangers posed by convicted sex offenders. The device only transmits information, it does nothing to restrict movement or to call attention to Doe's status as a convicted sex offender. Since the Act's requirement that Doe wear an electronic device is not punishment, the requirements does not violate the *Ex Post Facto* Clause.

Doe's complaint also alleges that the 2004 Act is unconstitutional as applied to him because it infringes on his fundamental right to privacy in violation of his substantive due process rights; unconstitutionally violates his right to procedural due process; and violates his right against self-incrimination. However, in his response to defendants' motion to dismiss, Doe does not address these claims. Therefore, the court concludes that these claims have been abandoned and they will be dismissed.

In his response to defendants' motion, plaintiff asserts, for the first time, that the increased reporting requirements and electronic monitoring required under the 2004 Act constitute a breach of his plea agreement. Doe points out that in *Santobello v. New York,* 404 U.S. 257 (1971), the Supreme Court held that a plea bargain is a contract, the terms of which must be enforced unless due process considerations militate against it. Doe contends that the plea bargain he entered into, in which he relied on the law then in effect in Tennessee regarding the probation rules for convicted sexual offenders, cannot be changed to his detriment without breaching the agreement.

In the instant case, there has been no breach of Doe's plea agreement. The length of his sentence has not changed. He will continue to serve the term of probation that he received at his sentencing. The only changes relate to the level of supervision he will be under for the remainder of his term. As stated above, the increase in supervision is a reasonable regulatory matter which is intended to protect the public, not an increase

in punishment. Accordingly, Doe has failed to show that he received an increased punishment; thus, his plea agreement has not been breached.

## Conclusion

Because the court finds that defendants' motion to dismiss should be granted, there is no need to reach the merits of plaintiff's motion for temporary restraining order and preliminary injunction. Accordingly, for the reasons stated herein, defendants' motion to dismiss [Doc. 12] will be granted; plaintiff's motion for temporary restraining order and preliminary injunction [Doc. 4] will be denied; and this case will be dismissed.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge